Good morning. My name is Molly Carlin. I'm an Assistant Federal Public Defender in the District of Arizona, and I represent Alfredo Camargo. I'd like to reserve two minutes, but I will watch the clock. So it's undisputed that Mr. Camargo filed his second PCR notice in accordance with the requirements of Arizona law. As a result, that notice was properly filed for purposes of the federal statute, 224014. So I'd like to first discuss statutory tolling and then address equitable tolling. Could you turn around the order for me? Equitable tolling first? Yeah, because in order to do statutory tolling, it seems to me we need to address perhaps a difficult question about whether or not we can treat it as properly filed, even though the Superior Court screwed up and treated it as, at the state's behest, treated it as late. For equitable tolling, it seems to me we don't have to find that the state court was wrong. It's enough that the state concedes the error. Why isn't that enough to get us to equitable tolling? Well, sure, I think that the state conceding the error certainly gets us to equitable tolling. I think a key question with respect to equitable tolling is the state's representation before the Arizona Court of Appeals. In the Arizona Court of Appeals- No, and the record's clear. The state misled the trial judge, misled the Court of Appeals. Honestly, they're quite candid in saying they made a mistake. Is that correct? So the state courts made a mistake at the behest of the state. Why isn't that enough to get us to equitable tolling? I think it is. We certainly don't disagree with that. So my question is, normally we say equitable tolling is when you're somehow prevented from filing on time. I take it, how were you prevented from filing on time? Well, we were prevented, I'd say, for two reasons. We're having problems with the clock. Oh. Well, I'd say for two reasons. We're eight minutes into this point. Thank you, Judge. Well, first, he was misled to believe that no protective petition was necessary. Because the state argued that he was- Misled by whom? By the state. Well, in two respects. No, they took the same incorrect position throughout. They were never inconsistent. They were always wrong. They were never inconsistent. The trial judge was wrong. The Court of Appeals was wrong. The Court of Appeals was discretionary review, so it's harder to say who was wrong. Well, how did that- you knew right after the trial judge made the mistake that a protective position was possible. Would it have been timely, then? Would- In other words, let's assume right after the trial judge on the second PCR goofed and said, this is a successive petition. It's not- I've failed to recognize that it's a tachyon. The first PCR kills all. So the second judge makes a mistake, enters an order. Had you filed a protective petition at that time, would it have been timely? I'm not sure it would have. That's why I'm asking. Would his protective- would his- Yeah, in other words, would you have been, within the one year, counting all the time on the first PCR as stoked? Would his- if I understood your question, his federal petition would have been timely, unless it had been dismissed, which is very possible, given that the state had been arguing at that time that his claims were unexhausted and he had a right to counsel had he proceeded back to a state court. And I'm not at all suggesting you should have done this. I'm asking because I think I know the answer, but I want to be sure. Had your client perfectly advised at the point when the judge entered the second PCR order, saying, I'm sorry, this is successive, therefore it's untimely as a matter of state law. Had your client filed a protective federal petition at that point, it would have been timely as a matter of federal law, correct? Yes. Okay, that's all I'm asking. Yes, and so- How are we to consider the fact that it wasn't filed? I mean, the law clearly indicates that. I think the Supreme Court has been patient and talked about the fact that the need to file a protective order, particularly in the context of consideration of underlying timelines, yes or no? Yes, so I want to- if we're still talking about equitable tolling, I want to push back on that in a couple of ways. One, even in case- when it's considered equitable tolling, the Supreme Court actually talked about whether he was diligent in filing his state petition. Well, let's not talk about equitable tolling because that could make it easier, and just to be on that, let's talk about statutory tolling. Okay, so with respect to statutory tolling, I think there are two- more than two points, actually. So I'd first like to talk about the fact that the state represented that his petition was precluded and not untimely. So at the point at which- But that's the same thing, isn't it? The second one was precluded because it wasn't filed within 30 days after the conviction because it was not an attack on trial court counsel. So precluded and untimely are really the same words here, are they not? I think not necessarily, Your Honor, because if it was precluded, then he wasn't required to file a federal petition.  So if that is what he understood, and indeed, Mr. Simpson agrees that that was incorrect, but Mr. Simpson argues that that was a reasonable mistake. If that was a reasonable mistake, then certainly it was reasonable for Mr. Camargo, who had no access to legal materials and didn't speak English, to think, oh, well, my petition was precluded. It wasn't untimely. So then he wasn't required to file a federal petition, a protected petition. Okay, but then would his federal petition have been timely? Would his federal petition, as he thought, as he in fact filed it, then yes. Why? It was filed well after a year after the conviction. Well, his, the second notice would have told, would have told timely. Even if it was, see, you're switching back and forth. My problem is that if you treat the second one as precluded, it wouldn't have told timely. I believe, yes, it would. If it's treated as precluded as opposed to precluded or successive, then it does tell timely. I don't have the case in front of me, but it is cited in our briefs that successive petitions are, they're considered conditions to filing. I think, actually, I think, I believe our twos may say that. They're conditions, sorry, they're conditions to obtaining relief, not conditions to filing. And so conditions to obtaining relief are commonly filed. Because the court could have treated it, is what you're saying. It's precluded, but the court could have treated it. I have a question about equitable tolling. Let's assume for the sake of this question that Judge Hurwitz's theory is correct, and that is that the state took the position that the state filing was untimely, even though that was clearly wrong. For what period of time does that mistake grant equitable tolling under that theory? Until what happens? Until the second PCR? Until the state acknowledged its error? Until what? Because normally we look at the situation, if there's lockdown, we say, okay, it was three days or it was ten months, it makes a difference. So using that theory, what's the right period of time? If the state misled, I'm just trying to make sure I understand your question, if the state, if the. . . Using Judge Hurwitz's theory, which is the state erroneously took the position that the state filing was untimely, it should have been accepted and dealt with on the merits, and it wasn't. Okay. Using that theory, what is the period of time during which equitable tolling would apply? Well, equitable tolling would apply at least for that beginning from. . . At least through the quotation of the second petition, which was through March 27, 2013. Why? Because he was misled to believe by the. . . Well, I'll say two things. First, by state law itself. He had a right to rely on state law. He could look at state law and say, huh, state law says I was right. MPs itself, when it's looking at equitable tolling, said he should have gone back. And I think Pruden also supports that. He should have gone back and just looked at state law and verified that he was correct. And then you filed a petition for review to the Court of Appeals and said, I was correct. And the state said, no, no, this is an attack. Same thing, reasons we said below. Well, I wouldn't agree with that because the state said, please summarily dismiss. . . Right. For the reasons stated in our petition. And the Court of Appeals then summarily dismissed. So he had. . . Right. It wasn't actually a question. It wasn't actually a question. It was that during at least that period of time, the state still hadn't conceded its error. That's true. And then the state Supreme Court then affirmed. . . There was a petition for review to the Supreme Court. Right. My look at the record suggests that the state didn't respond to the petition for review. Is that right? The state just filed an informal. . . So the state filed an informal. . . Please. Please deny. Right. Please deny. And to be candid, the state then said the trial court was right. Okay. However, in its appellate briefing, it had said the trial court denied. . . So to get back to Judge Graber's question, at least throughout the period of the second PCR, whatever, put aside what your client objectively thought or subjectively thought, the state's position was still that the second PCR was untimely because it was an attack on trial counsel's ineffectiveness. I. . . To be clear, the state's position was never that it was untimely because it was. . . Well, it had to be that it was untimely because you must. . . The trial judge understood it as such. The trial judge said it was filed too late. If you want to attack trial counsel's effectiveness, it has to be within the first 30 days. The. . . I'm looking at the trial court's order, the second PCR. He said, too late. This is about trial court's ineffectiveness. You should have brought that up before.  However, in its briefing, the state actually said that the. . . that the claim that had been raised was ineffectiveness of the PCR count. That's what I meant. Right. But the trial judge understood it to be an attack on trial counsel. That's true, but I do think it's important to point out, and that's why we're not necessarily saying that the trial judge was wrong in the state law because it simply misconstrued the claim that was raised. You have exceeded your time, but we'll give you a minute for rebuttal. Since we asked many questions, we'll hear from the state. May it please the court. Counsel, David Simpson from the Arizona Attorney General's Office on behalf of the state. Mr. Simpson, let me ask you a predicate question. Sure. And I applaud your candor in the briefing, as your office is consistently candid in briefing. The statute of limitations, the epistatutes in affirmative defense, is it not? Correct. It's not jurisdictional? Correct. Why in the world didn't you waive it in this case? I. . . And please, could you, when you go back from the argument today, go talk to General Berdovich and suggest to him that this would be, like, the most appropriate case I've ever seen where the state waiving the statute of limitations. Your Honor, had I known that it would unfold this way, we would have considered that differently. I think the merits are by far the easier way to decide this case. Let's assume for a moment that we're lazy and don't want to get into the merits of the claim, which nobody has ever done yet. Right. The state judge hasn't and the district judge hasn't. We generally don't like to do stuff in the first instance. Assuming that's the preference of the panel, would you be at a level to mediation in this case or to discussing settlement with the other side? No, Your Honor, because I still think the statute of limitations argument is correct. Wow. Okay. So, yes. Your shot. I think the statute of limitations argument is correct. I think it's a more difficult way to resolve the case, but I still think it's the right way to resolve the case. But do you agree that it occurred, the difficulty in this case occurred in part because your office misrepresented to the second PCR judge the nature of this pro se petition? So, let me clarify actually what the office's representations were. So, at the trial court PCR level, the state filed nothing. Right. And, look, I agree that one got dismissed. Correct. It was dismissed. Well, it may not have gotten dismissed appropriately, but it was dismissed, and you're not contending that the first PCR expiration of time wasn't total.  Correct. Okay. So, now we get to the second one. Oh, no, I'm sorry. The second PCR petition, Your Honor. The second PCR petition at the trial court level was dismissed sua sponte as untimely. Right. Okay. And so. And you agree that it was timely? Correct. Okay. In the opinion of the state executive branch, yes. Okay. Well, in the opinion of, not in the opinion of the state judicial branch, in our view they made a mistake. So, did you tell them that they were making a mistake? We did not. That's what I saw, too, that you didn't go in and say, Judge, we ask you to reconsider this because you've made a mistake. This was not untimely. Right. Now, this is actually a good point, Your Honor, because as far as I'm aware there's at least one other case that's currently being handled by our office where the same mistake has been made, and in that case the habeas petitioner filed a protective petition. That alerted the Arizona Attorney General's office to what was going on at the county level, and we were able to intervene and say, you're making a mistake. But in this case what the petitioner did was file a petition for review. Which should have been successful. Correct. And you filed an opposition to it saying, no, no, the trial judge was right. Correct. It was. So, I really do want to clarify this. So, what happened here is the county attorney filed a response that. Yeah, you are the state. Correct. I'm not blaming you, Attorney General. Correct. But we represent the state, so I know that's fair to hold us to their representation. What they represented is, so I'm looking at page 551 of the excerpts of record. It said the trial court summarily dismissed petitioner's successive PCR filing for raising improper claims in an untimely or successive PCR proceeding. That's wrong. So, that could be. Correct. That's wrong on both counts. Correct. That's wrong on both counts. And then it proceeds to go on and to discuss whether the petition was successive under state law. But I think the. It wasn't.  Stop. Agreed. Agreed. Okay. So, the state of Arizona filed in the Court of Appeals. I understand the trial judge goofed on his own. So, responding. Right. That often happens. It's not good. Courts of Appeals goof on the trial judge. So, we're told more often than we'd like. The trial judge makes a mistake on his own. The pro se petitioner goes up to the Court of Appeals and says, your honors, the judge has made a mistake. This is, on its face, an attack on the effectiveness of my PCR counsel, which is an override of PCR because that's a substitute for my direct appeal. And the state says, oh, no, it's a successive or untimely petition. And the Court of Appeals, which is also very busy and has thousands of these and relies on the state's response, looks at it and denies review. We don't know why they deny review because it's discretionary. Right. So, look, I understand that everybody is at fault here. But under those circumstances, you're saying a pro se petitioner should have known that the state was going to misrepresent to the Court of Appeals what was going on here so that it wouldn't grant review? Because I guarantee you, if your brief had said the trial judge made a mistake, this was a timely petition, the Arizona Court of Appeals would have granted review and remanded, wouldn't they? I agree. I agree. But the issue, Your Honor, is not just that a mistake was made, but that whether that mistake was raised in federal court in a timely way. And so, mistakes happen in criminal litigation. But society has a powerful interest in ensuring that they are corrected in a timely way. But that's why I asked you at the beginning, the AEDPA statute of limitations is an affirmative defense that you can choose not to raise. Correct. And, boy, the equities are just all on the other side in this case. I don't think so, Your Honor. Not on the merits. Not on the merits. We're not talking about that now. We're talking about the timing equities. If it was a trial counseling or ECR counseling. But here's a pro se litigant who is told by the state and by both the executive and the judicial branches that the petition is untimely. Correct. So why is he supposed to know better? Because that's exactly what Pace says, Your Honor, is that when there's reasonable confusion about whether a round of post-conviction review will be rejected as untimely, a petitioner must file a protective petition. But there's no reasonable confusion here, is there? You're a very experienced lawyer and your office is very good. The moment you looked at this, indeed, the moment that I looked at it, I screw around with some of these all the time. I said, oh, my gosh, somebody made a mistake here. And your office obviously, you know, to their great credit, when this thing got to the appellate level to our courts and you had to take it over, looked at it and said, oh, my gosh, somebody made a mistake here. Why isn't the pro se prisoner entitled to look at this and say, somebody made a mistake. If I just keep asking the Arizona courts to look at this, they'll fix it. And one reason they didn't fix it was because the county attorney said to them, nothing to fix here. Nothing behind the curtain. So, I mean, I think the argument that you're making, Your Honor, is the argument that the dissenters made at pace. The only difference, perhaps. Was pace represented? I am not sure whether pace was represented, but the Court has never drawn a distinction as far as represented versus unrepresented in terms of whether a protective petition is filed. The only possible distinguishing factor would be the state's representation. That's a big deal. I mean, why isn't that all by itself an entitlement to equitable tolling? I know that's Judge Hurwitz's question as well. Why isn't that almost per se a matter for equitable tolling when the state has an entity, and not you personally, but the state as an entity gets it wrong and insists on a wrong answer that prevents this person from having the merits of the matter heard? Because that's what it did. That's the whole point of equitable tolling. It prevents, it's something outside the control of the individual that prevents it from being heard on the merits. And it's hard to think of anything more outside its control than what the state says. Because regardless of what the state is saying, when the trial court holds that it is untimely, he is on notice at that point that there is at least a possibility of reasonable confusion about whether the statute of limitations will be tolled and he must file a protective petition. But let's assume that he files his petition for review in the Court of Appeals, and the state does, the county attorney, does what he's supposed to do. And says, Your Honor, I've looked at the record, and my gosh, he's right. As you suggested. And bingo, it gets heard on the merits. Do you have any doubt the Court of Appeals grants that petition a reinstatement? I would hope it would. I can't imagine it wouldn't. It never fails to reinstate a petition when the state says it should be reinstated. So I can maybe answer this in a different way, though. So, okay, so let's say that the state's representations before the Arizona Court of Appeals entitle him to some degree of equitable tolling. So at the, you know, and he may be reasonably, or I don't, you know, at some arguendo, he's reasonably thinking that, all right, well this will get fixed by the Arizona Court of Appeals because it's clearly wrong. So the Arizona Court of Appeals denies discretionary review on March 7th, March 27th, 2013. And I'm sorry, that's the Arizona Supreme Court. The Arizona Court of Appeals denies discretionary review December 4th, 2012. And he doesn't file his habeas petition for 364 more days. So even if you give him equitable tolling until the Arizona Court of Appeals renders its decision because you think the state is, because you're holding it against the state. Which is carried on through their comments to the Arizona Supreme Court. The Arizona Supreme Court, the state did not file a response. It filed a notice of acknowledgement. It took no action. No, it took no action. It took no action. What you could have done, right, to fix the problem. So the fact that it was later doesn't take any action doesn't undo the fact that it was affirmatively misrepresenting or on the wrong side of the determination earlier, does it? Correct. I mean, so why wouldn't we consider that as part of the equitable tolling the extent that we did? I mean, if it took no action, it didn't fix its mistake. Because ultimately the question is whether there was an impediment that prevented a reasonably diligent petitioner from filing on time. What does your notice of acknowledgment say? Remind me. I can point to it. I think it says we – It typically says – We're not doing no response. This should be denied for the reasons that it was denied. Correct. Or the response isn't necessary, but we wouldn't waive the ability to file a response later on. Right. So don't you think under those circumstances, what the errors of the Supreme Court, by a reason, are going to do is take a look and see what the state said go on? Yes, and I think that's a reasonable assumption. But I think that the point is, again, though, not just whether the state's made a mistake, because, again, we completely agree that the state's made a mistake here, but a habeas petitioner still has a duty to raise those mistakes. Let me ask the question that I asked you at the beginning differently. What's your interest in asserting the statute of limitations here? In this particular case. Not in other cases. I mean, it's not going to happen. This confluence of mishegoss, to use a legal term, is not going to happen very often. You're not going to make a mistake. The trial court's not going to make a mistake. I can count on the fingers of one hand the number of times an attorney general showed up and said, I'm sorry, the state made an error down below. Given how rarely this happens and how frivolous you think his claim is on the merits, why not let him? It never occurred to me that the district court wouldn't just address it on the merits anyway. And actually when the district court wanted to grant a certificate of appealability on this claim, we responded or we objected and said, no, if you're at all concerned about the time bar issue, then go ahead and address the merits because they're easier. But I think the state's interest in this, particularly if you look at a case like this where there's a guilty plea, and so we don't have evidence in the record as far as guilt. One of the underlying challenges of ineffective justice counsel was the fact that they didn't get the evidence. So to say there's no evidence in the record based upon a claim where he's saying, by the way, one of the reasons why my trial counsel was ineffective was that they didn't actually gather evidence. To correct you, Your Honor, that's actually not the claim that's raised here. The claim that's raised here is a constructive denial of counsel. Well, there is some debate about that in the context of how to understand that claim. I know that's your position. Right. Particularly in the context of pro se petitioning. But there is at least some discussion in this case about not gathering evidence in an investigation, is there not? There is. That came up from the magistrate judge, I think, improperly reading a number of claims that appear nowhere in the face of the magistrate. Let's read it the way you read it. So what you said, it's an attack on first of right PCR counsel's effectiveness. Yes, yes. For failure to raise. One reason there's nothing in the record is that the second PCR was dismissed sui sante by the trial court. Had the second PCR not been dismissed, Mr. Camargo could have attempted to make a record about what first appellate counsel did. Let me clarify what I was referring to about the state of the record. So I think these claims are clearly meritless on their merits, but setting that aside for a moment, God forbid this case has to go back, habeas relief is granted, and a new trial is granted. It's going to be much harder for the state to retry this case four, five, six, seven, eight years down the line than it would be if it were raised in a timely way. And that's particularly true in guilty plea cases because you may not have the witnesses on the record. So the state suffers real prejudice, and society as a whole suffers real prejudice when these claims are not raised in a timely way. But you do agree that had the second PCR not been improperly dismissed, whatever record that was necessary for the federal court to act on the claim of ineffectiveness of the first PCR counsel would have either been made or not made in the second PCR. I think the record as it stands is amply sufficient. Okay. That wasn't the question. Yes. I mean, to the extent that any record was necessary here. Assuming further record was necessary, he would have made it in the state court. He would have made it in the PCR. Thank you. Thank you, counsel. Thank you, Your Honor. Your time has expired. Ms. Carlin, you have a minute. Thank you, Your Honors. I'd like to just briefly go back to the timeliness point. So the state has argued that the diligence required is diligence in filing a federal petition. But that's not supported by the case law. Now, Pace actually looked at whether his failure to file a protective petition was excused. And that's in Pace's, the equitable tolling argument at the end of Pace. The equitable tolling inquiry there was whether he was diligent in filing his state PCR. And then it kind of after the fact said, oh, and by the way, he also waited a few months before filing his federal petition. And there's a similar inquiry in Buckles. As for the state's failure to speak up and to tell the Court of Appeals or the state Supreme Court, hey, by the way, we made a mistake below, or the trial court made a mistake, SOSA mentions, SOSA-PDS mentions that the state has a responsibility to speak up but can't rely on wait and that the state decision to file a petition is untimely. I can try to answer. You know these larger maps wouldn't be involved, but I was interested, Mr. Simpson, in your response. Let's assume that there's equitable tolling right up to the point where the Court of Appeals denies the petition for appeal. And I think there would be equitable tolling from the time of the plea right up to then, correct? Yes. So if you filed 364 days later, it would be timely, wouldn't it? Yes, I just want to correct one thing. It would be from the time that he is, from the time that tolling, from the time that. It became direct. Right. Yes. And so unless you add in the time through the Arizona Supreme Court, it wouldn't necessarily be timely because it would have been more than 365 days. Well, I think it has to be tolled through the time of the appeal. I understand that. The math question is. Let me ask a math question. The math answer, I think, is that unless the equitable tolling is valid through the time the Arizona Supreme Court had the case and decided it, it wouldn't be enough time. Your Honor, I would have to take a little further. We can do the math later. I was just hoping one of you had thought it through. Mr. Simpson obviously had. I just wondered if you could respond to it. So basically the state is arguing that there's a one-way ratchet, that any errors are to the state's benefit and the petitioner's detriment, and that can't be right. Thank you, counsel. The case just argued is submitted, and we appreciate very much the arguments of both counsel and as you can tell, it's a bit of a confusing record, and you've been very helpful.
judges: Graber, Hurwitz, Boulware